# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAY HARRIS,

      Plaintiff,

v.                                    Case No. 8:24-cv-2459-TPB-TGW

PINELLAS COUNTY, FLORIDA, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on the following motions:

> Defendant Bob Gualtieri's "Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law" (Doc. 17);

> Defendant "Pinellas County's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law" (Doc. 23); and

> "Defendants Jesus Gonzalez and Chief Judge Shawn Crane's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law" (Doc. 35).

Plaintiff Jay Harris filed responses in opposition. (Docs. 28; 33; 36). After

reviewing the motions, responses, court file, and the record, the Court finds as

follows:

## Background[1]

Plaintiff is a deaf resident of Pinellas County, Florida, who relies on American Sign Language ("ASL") interpreters to communicate.  On June 30, 2024, Plaintiff was arrested and charged with mortgage fraud.  According to Plaintiff, he was denied access to qualified ASL interpreters during this arrest.  He also alleges that he was denied access to interpreters at other arrest and detention proceedings, court hearings, and public training workshops in Pinellas County from 2022 through 2025.  Plaintiff alleges that despite requesting the interpreters, no qualified interpreter was provided, and that he experienced significant delays and technical difficulties with other auxiliary aids.  For example, Plaintiff claims that on August 21, 2024, his interpreters left midway through his court proceedings without explanation, forcing the hearing to be rescheduled.  He also allegedly experienced confusion and distress at a post-arrest proceeding on November 15, 2024, when he did not receive a functioning TTY (teletypewriter) device.

Plaintiff initially filed a complaint on October 23, 2024, which was amended on January 22, 2025, and again on February 24, 2025.  (Docs. 1; 6; 10).  Plaintiff asserts claims for a violation of Title II of the ADA (Count I), a violation of § 504 of the Rehabilitation Act (Count II), violations of §§ 413.08, 413.081, and 760.07, *F.S.*, (Count III), and disability-based discrimination (Count IV).  He requests both

---

[1] The Court accepts as true the facts alleged in the second amended complaint for purposes of ruling on the pending motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Court is not required to accept as true any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

injunctive relief and monetary damages.  Defendants seek dismissal of all counts. *See* (Docs. 17; 23; 35).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (Lazzara, J.).

As Plaintiff in this case is proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform with procedural rules and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

<u>Analysis</u>

Defendants advance three primary arguments in support of dismissal: (1) Plaintiff lacks standing to seek prospective injunctive relief; (2) the second amended complaint constitutes a shotgun pleading; and (3) Plaintiff fails to state a claim upon which relief can be granted. Defendants Chief Judge Shawn Crane and Jesus Gonzalez additionally argue that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA").

***Standing***

Because standing implicates subject matter jurisdiction, the Court addresses it as a threshold matter. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Only an alleged harm that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical' is enough to show that a party 'has a case or controversy rather than, say, a strong and abiding interest in an issue, or a desire to obtain attorney's fees.'" *Hunstein v. Preferred Collection and Mgmt. Servs., Inc*., 48 F.4th

1236, 1242 (11th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021)).

Since injunctions "regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate . . . threat of *future* injury." *Wooden v. Board of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original). "In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). "District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Longfellow v. Lee Mem'l Health Sys.*, No. 2:14-CV-142-FTM-29, 2014 WL 4682080, at *1 (M.D. Fla. Sept. 19, 2014).

Here, Plaintiff seeks injunctive relief requiring Defendants to provide him with qualified ASL interpreters at all future proceedings, develop ADA and § 504 compliance policies, train all court and jail personnel on ADA requirements, implement an on-call interpreter system, and employ 24/7 ASL interpreters. In support of such injunctive relief, Plaintiff cites to various instances where he was purportedly denied access to qualified interpreters or other auxiliary aids that would allow him to effectively communicate, which he alleges Defendants are responsible for providing. Defendants respond that the second amended complaint only discusses the past conduct of Defendants and therefore fails to allege a "real

and immediate" threat, which is required for prospective injunctive relief. *See Shotz*, 256 F.3d at 1081.

"While past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy, the plaintiff's exposure to illegal conduct in the past is nonetheless evidence bearing on whether there is a real and immediate threat of repeated injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) (internal citations and quotations omitted). Still, the Court must evaluate standing "based on the facts alleged in the complaint, and [it] may not 'speculate concerning the existence of standing or piece together support for the plaintiff.'" *See Shotz,* 256 F.3d at 1081 (quoting *Cone Corp. v. Fla. Dept. of Transp.,* 921 F.2d 1190, 1210 (11th Cir. 1991)).

In the second amended complaint, Plaintiff fails to allege that he faces a real and immediate threat of future harm. Specifically, he does not discuss whether any of his cases are ongoing, and whether those cases are likely to have future court dates. He also does not discuss any impending deprivation of access during his detention or at upcoming training workshops. As a result, the Court finds that the second amended complaint fails to establish standing to the extent it seeks injunctive relief. The motions to dismiss are granted as to this ground. However, in an abundance of caution, the Court will grant leave to amend, if Plaintiff may do so in good faith.[2] *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

---

[2] The Court notes that it is highly unlikely that Plaintiff would be entitled to a broad injunction overhauling Defendants' training policies or compelling the creation of an "on-

*Shotgun Pleading*

Defendants also argue that the second amended complaint should be dismissed because it is a shotgun pleading. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *See Anderson v. Dist. Bd. Of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has identified four primary types of shotgun pleadings:

(1)    complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;

(2)    complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;

(3)    complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and

(4)    complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

---

call" interpreter system to be available to him 24/7. *See Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004) ("Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities. . . . It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided . . . [or] impose an undue financial or administrative burden."). Even if Plaintiff were afforded injunctive relief, it would likely be limited to ensuring he has qualified interpreters or other adequate methods of communication at future court proceedings. Plaintiff should therefore think carefully consider the relief he is requesting in any future amended complaint.

*See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Defendants specifically contend that the second amended complaint qualifies as a shotgun pleading under the second, third, and fourth categories because Plaintiff appears to apply every stated fact to all Defendants, none of whom are connected to any particular act or omission causing the purported violations. The Court agrees.

Even though Plaintiff separates each of his four counts by statutory violation and provides some factual context for those violations, dismissal is warranted because Plaintiff does not specify the role each Defendant could have played in causing each alleged violation. *See Smith v. Knipe*, No. 6:23-cv-1718-WWB-LHP, 2024 WL 988853, at *4 (M.D. Fla. Feb. 13, 2024), *report and recommendation adopted*, No. 6:23-cv-1718-JSS-LHP, 2024 WL 1619412 (M.D. Fla. Apr. 15, 2024) (dismissing complaint as a shotgun pleading where plaintiff failed to "delineat[e] the roles or alleged wrongs attributable to each of the [] named Defendants."); *Pyatt v. Gimenez*, No. 1:20-CV-20827, 2020 WL 4003495, at *5 (S.D. Fla. July 15, 2020) (dismissing complaint where it "suffer[ed] from the second and fourth 'sins' of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions and of alleging conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"). The motions to dismiss are granted as to this ground. However, the court will grant an opportunity to amend.

In any amended complaint, Plaintiff is directed to set out separately numbered counts as to each of the different Defendants, indicating which Defendant the count is against.  Within each count, Plaintiff should assert a single theory of recovery against only that Defendant, clearly identifying the acts and omissions he believes that particular Defendant is responsible for committing.

***Failure to State a Claim***

Defendants next argue that each of Plaintiff's counts fails to state a claim upon which relief can be granted.

<u>Counts I and II</u>

To establish a disability discrimination claim under Title II of the ADA or § 504 of the Rehabilitation Act, Plaintiff must establish that he: (1) is a qualified individual with a disability; (2) was either excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities; and (3) that the exclusion or denial of benefit was because of Plaintiff's disability.[3]  *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).  A defendant does not need to accommodate a plaintiff who has meaningful access to the benefit at issue.  *See Ambrose v. St. Johns Cnty. Sch. Bd*., 664 F. Supp. 3d 1322, 1331-32 (M.D. Fla. 2023) (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)).  Therefore, to establish these claims, Plaintiff must demonstrate that he lacks "meaningful access" to a public benefit to which he is entitled because of his disability.  *See id.*

---

[3] "Given the textual similarities between the two statutes, the same standards govern" Title II and § 504 claims.  *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (citing *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla*., 610 F.3d 588, 604 (11th Cir. 2010)) (internal quotations omitted)).

To the extent that Plaintiff seeks monetary damages, Plaintiff must also plead and prove that Defendants engaged in intentional discrimination.[4]  *See Silberman*, 927 F.3d at 1134 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).  To prove intentional discrimination, Plaintiff must show deliberate indifference – that Defendants "knew that harm to a federally protected right was substantially likely" and "failed to act on that likelihood."  *See id.* (quoting *Liese*, 701 F.3d at 344).  This conduct must also independently violate the Fourteenth Amendment.  *See United States v. Georgia*, 546 U.S. 151, 157-58 (2006) *Nat'l Assln of the Deaf v. Florida*, 980 F.3d 763, 771 n.2 (11th Cir. 2020).  And to hold a government entity liable, Plaintiff must allege that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond."  *See Silberman*, 927 F.3d at 1134.

The second amended complaint describes the various roles of Defendants and the general ways in which Plaintiff contends they are responsible for ensuring his access to court proceedings, among other things.  But critically, Plaintiff never alleges a lack of meaningful access.  He does not allege that Defendants intentionally failed to provide him interpreters.  Nor does he allege that Defendants had actual knowledge of discrimination and failed to respond.  Indeed, Plaintiff fails

---

[4] As previously discussed, Plaintiff fails to establish standing to seek injunctive relief under these statutes.  *See Wood v. President and Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219-20 (11th Cir. 1992).

to make any allegations about the acts or admissions of any particular Defendant, which is wholly insufficient.

Furthermore, the Court notes that it is highly unlikely that Plaintiff can bring a damages suit against Chief Judge Crane, who appears to have been acting exclusively in his official judicial capacity. *See Shapiro v. Ingram*, 207 F. App'x 938, 940 (11th Cir. 2006) ("Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction.").  It is also not clear to the Court that Chief Judge Crane is the proper defendant for this type of suit, but because the motions did not raise this argument, the Court does not further address it.

In sum, Plaintiff fails to state a claim for damages in Counts I and II, and motions to dismiss are therefore granted as to this ground.  The Court will nevertheless permit amendment, if Plaintiff may do so in good faith.

Count III

In Count III, Plaintiff brings claims against Defendants for violations of § 413.08, *F.S.*, which broadly covers the rights of disabled persons and prohibits discrimination in "public accommodations;" § 413.081, *F.S.*, which applies to interference with a service animal; and § 760.07, *F.S.*, which provides various remedies for unlawful discrimination subject to the exhaustion of administrative remedies.  Again, Plaintiff fails to specifically identify the actions or omissions of any single Defendant that caused the alleged violations, which makes it difficult – if not impossible – to determine whether he has stated a claim for relief under any of

these statutes. Plaintiff does not say when, how, and by whom these specific statutes were violated and instead leaves the Court to speculate as to the facts that may support these claims. For example, Plaintiff mentions nothing at all about a service animal within his pleadings. Consequently, Count III fails to state a claim, and the motions to dismiss are granted, but the Court will grant leave to amend. In any amended complaint, Plaintiff must specify which Defendants violated which statutes and how they did so.

Count IV

Regarding Count IV, the Court finds it duplicative of Counts I through III. To the extent Plaintiff is alleging discrimination under Title II of the ADA, § 504 of the Rehabilitation Act, or any Florida statutes, he should include the relevant factual details and allegations in the counts specifically pertaining to those statutory violations. As pled, the Count does not appear to raise an independent claim for relief. The motions to dismiss are granted as to this ground, with leave to amend.

**_Exhaustion of Administrative Remedies_**

Defendants Chief Judge Crane and Jesus Gonzalez additionally argue for dismissal on the basis that Plaintiff failed to exhaust his administrative remedies pursuant to the PLRA, 42 U.S.C. § 1997e, *et seq*., which states in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  To exhaust his administrative remedies, an inmate must properly comply with all steps or processes set up by the agency so that it can address issues raised by the inmate on the merits.  *See Halpin v. Crist*, 405 F. App'x 403, 407 (11th Cir. 2010).

However, the Supreme Court recently clarified that "PLRA exhaustion is 'not jurisdictional.'"  *Perttu v. Richards*, 145 S. Ct. 1793, 1801 (2025) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  In so doing, the Supreme Court further emphasized that exhaustion "is not a 'pleading requirement,' which is why 'inmates are not required to specially plead or demonstrate exhaustion in their complaint.'"  *Perttu*, 145 S. Ct. at 1801 (quoting *Jones,* 549 U.S at 216).  The motion to dismiss is therefore denied as to this ground.  This does not preclude Defendants from raising this issue as an affirmative defense.  *See Perttu*, 145 S. Ct. at 1801 ("PLRA exhaustion is a standard affirmative defense.").

## **Pro Se Warning**

Finally, Plaintiff is advised that even *pro se* plaintiffs must conform with procedural rules, including the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida.  Litigation − particularly in federal court − is difficult, and Plaintiff should consider hiring an attorney.  If he is unable to afford counsel, she should consider the resources available to *pro se* litigants, including the Legal Information Program operated by the Tampa Bay Chapter of the Federal Bar Association, and the Middle District of Florida's guide to assist *pro se* litigants proceeding in federal court, which is located on the Court's website.

Accordingly, it is

**ORDERED**, **ADJUDGED**,  and **DECREED**:

1.  Defendants' motions to dismiss (Docs. 17; 23; 35) are hereby **GRANTED IN PART.**  The motions are granted to the extent that the second amended complaint is dismissed without prejudice as set forth herein, with leave to amend.

2.  The motions are otherwise **DENIED**.

3.  Plaintiff Jay Harris is **DIRECTED** to file a third amended complaint on or before September 16, 2025.  Failure to file a third amended complaint will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>26th</u> day of August, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE